FILED: APRIL 15, 2009
09CV2307
JUDGE CASTILLO
MAGISTRATE JUDGE VALDEZ
AO

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DYSON, INC., | ) | CASE NO. |
| *Plaintiff*, | ) | |
| vs. | ) | JURY TRIAL DEMANDED |
| HOOVER, INC. and TTI FLOOR CARE NORTH AMERICA, INC., | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiff Dyson, Inc. ("Dyson") brings this action against defendants Hoover, Inc. and TTI Floor Care North America, Inc. (collectively, "Hoover") to stop Hoover's deceptive acts and practices in its advertising of its vacuums, and to stop Hoover's infringement of Dyson's proprietary patented technology. Hoover's conduct is confusing, misleading and deceiving to consumers, and is causing, and is likely to cause, serious and irreparable injury to Dyson's sales, market share and reputation among consumers. In addition, Hoover infringes Dyson's valuable patent rights in vacuum technology. Hoover will continue with this tortious conduct until this Court enjoins it from doing so. Dyson alleges as follows:

## NATURE OF THE ACTION

1. This is an action in which Dyson asserts both Federal and State causes of action as follows: Count One—false or misleading descriptions and representations of fact in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); Count Two—patent infringement in violation of the Patent Act, 35 U.S.C. § 271 *et seq.*; Count Three—deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*; Count

Four—unfair trade practices in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq.*; and Count Five—conduct in violation of the common law of unfair competition.

**JURISDICTION**

2. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

3. This Court has original jurisdiction over Counts One and Two under 28 U.S.C. §§ 1331 and 1338(a) because they arise under the laws of the United States, namely: the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which is an Act of Congress relating to false and misleading descriptions or representations of fact; and the Patent Act, 35 U.S.C. § 271 *et seq.*, which is an Act of Congress relating to patent infringement.

4. This Court has supplemental jurisdiction over Counts Three, Four, and Five under 28 U.S.C. § 1367(a) because they are claims so related to claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court has personal jurisdiction over defendant Hoover because Hoover has transacted business within this State and District, has committed the tortious acts giving rise to the claims that are the subject of this Complaint within this State and District, and has otherwise made and established contacts with this State and District sufficient to permit the exercise of personal jurisdiction.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400.

## THE PARTIES

7. Dyson, Inc. is an Illinois corporation with its principal place of business at 600 West Chicago Avenue, Suite 275, Chicago, Illinois 60653.

8. On information and belief, defendant Hoover, Inc. is a Delaware corporation with its principal office located at 7005 Cochran Road, Glenwillow, Ohio 44139.

9. On information and belief, defendant TTI Floor Care North America, Inc. is a Delaware corporation with its principal office located at 7005 Cochran Road, Glenwillow, Ohio 44139.

10. On information and belief, Hoover is primarily responsible for the design, manufacture, use, sale, offer for sale, importation, marketing and advertising of the following Hoover vacuum cleaners that are the subjects of this Complaint: the Platinum Collection Lightweight Bagged Upright with Canister; the Platinum Collection Cyclonic Bagless Upright; the Platinum Collection Cordless Hand Vacuum; the Platinum Collection Cordless Stick Vacuum; the Nano-Lite Upright Bagless Vacuum; the Self-Propelled WindTunnel Bagless Upright; the Savvy Bagless Upright, and the WindTunnel Bagless Upright. Hoover offers these vacuums for sale throughout the United States, including within this District. Hoover advertises and markets these vacuums throughout the United States—including in this District—through various media, including television, Internet, and print.

11. Dyson and Hoover compete for customers purchasing premium vacuums nationwide, including for customers in this District.

## BACKGROUND OF THE DISPUTE

### Dyson's Multi-Cyclonic Vacuums

12. Dyson manufactures and sells patented household vacuum cleaners that use patented cyclonic separation technology to spin dust and dirt out of the air at incredibly high speeds,

leaving the airflow unobstructed and allowing the vacuums to maintain a constant level of suction. Vacuums sold under the Dyson brand are known internationally for their patented technology and engineering, and outstanding cleaning performance.

13. Prior to 1993, conventional vacuum cleaners worldwide were essentially suction-type machines that used a bag in the cleaner to trap dust and dirt. In 1978, while vacuuming his home, Sir James Dyson noticed that his Hoover Junior bagged vacuum cleaner was routinely losing suction power. Dust quickly filled the pores of the bag and blocked the airflow, causing the vacuum to lose suction. To solve the loss of suction associated with traditional vacuums, Sir James Dyson set to work to develop a bagless vacuum that used cyclonic technology to separate dirt and debris from the vacuum's incoming air flow without diminishing suction.

14. Five years and over 5,000 prototypes later, Sir James Dyson perfected his first Dual Cyclone™ technology bagless vacuum cleaner. The new machine used an outer cyclone to remove large debris and dirt, while an inner cyclone created an intense centrifugal force to spin the finer dust particles out of the air. Dust and dirt particles were deposited into the vacuum's clear collection bin, eliminating the need for conventional and under-performing vacuum bags.

15. After obtaining patents for his Dual Cyclone™ technology vacuum, Sir James Dyson offered to license the world's leading vacuum manufacturers, including Hoover. Hoover declined his licensing offer, choosing instead to continue to manufacture and sell bagged vacuums. Eventually, Sir James Dyson was able to license his design in Japan, where it was commercialized as the pink "G Force" vacuum, selling for the equivalent of $2,000 each. In 1993, Sir James Dyson used the royalties from the G-Force, among other things, to set up a UK-based group of global companies (collectively, "Dyson UK") to develop and manufacture vacuum cleaners under his own name.

16. Within two years, Dyson UK's Dual Cyclone™ technology DC01 vacuum took the UK market by storm. By 1996, the company's UK sales surpassed those of the two market leaders, Hoover UK and Electrolux. The table below, which is based on data from third party market research firm GfK Limited, shows that Dyson UK's sales continued to grow, and by 1998—only five years after introducing its cyclonic vacuums to the UK market—Dyson UK controlled over half of the UK market measured by value:

**UK Market Share (% total sales by value)**

| | **Hoover UK** | **Dyson UK** |
|---|---|---|
| 1992 | 33.1 | — |
| 1993 | 25.6 | 0.9 |
| 1994 | 24.1 | 4.1 |
| 1995 | 19.5 | 15.7 |
| 1996 | 16.3 | 29.7 |
| 1997 | 11.8 | 46.5 |
| 1998 | 9.2 | 53.3 |
| 1999 | 10.4 | 52.1 |
| 2000 | 9.6 | 50.8 |
| 2001 | 9.9 | 51.5 |
| 2002 | 8.6 | 46.6 |
| 2003 | 8.3 | 45.2 |
| 2004 | 8.2 | 41.6 |
| 2005 | 9.2 | 36.5 |
| 2006 | 8.9 | 34.4 |
| 2007 | 6.9 | 33.5 |
| 2008 | 6.4 | 33.9 |

A true and correct copy of the GfK Limited data upon which this chart is based is attached hereto as Exhibit A.

17. Soon after Dyson UK's success in the UK, other major vacuum cleaner manufacturers started to sell their own bagless vacuum cleaners. Hoover UK (a separate and distinct entity from Hoover US) copied Dyson UK's cyclonic vacuum technology and used it as part of its bagless Triple Vortex vacuum cleaner, which it launched in the UK in 1999. Dyson Appliances Limited (part of "Dyson UK") successfully sued Hoover UK for patent infringement related to the Triple Vortex product, and received approximately £6 million (equivalent to about $8.5 million in today's dollars) from Hoover UK as a result of this litigation.

18. As its sales in the UK continued to flourish, Dyson UK's separation systems team members developed an entirely new type of cyclone system having even greater suction power. They discovered that spreading the air flow through many cyclones generated even higher suction power, which picked up even more dust from the cleaning surface. As a result, Dyson UK introduced its Root Cyclone™ technology vacuums to the UK in 2001.

19. In 2002, Dyson introduced its high-performing Root Cyclone™ technology vacuums to the United States market. At the time, Hoover was positioned as the top seller of upright vacuums in the US with 36% of the market's upright vacuum total dollar sales. Word of Dyson's vacuums' outstanding performance and engineering quickly spread, however, and Dyson's US market share quickly began to grow.

20. By 2005, only three years after entering the US market, Dyson overtook Hoover as the top upright vacuum cleaner seller in the US, capturing almost 25% of upright vacuum sales by value. The table below, which is based on data from third party market research firm NPD Group, Inc., shows that Dyson's US value market share for upright vacuums rose from nothing in early 2002 to 30.5% in 2008, while Hoover's US value market share for upright vacuums declined from 36% to 13.4% over that same time:

**US Upright Vacuum Value Market Share (%)**

| | **Hoover** | **Dyson** |
|---|---|---|
| 2002 | 36.0 | 0 |
| 2003 | 30.7 | 3.1 |
| 2004 | 21.9 | 15.6 |
| 2005 | 15.3 | 23.3 |
| 2006 | 14.4 | 27.4 |
| 2007 | 12.9 | 29.8 |
| 2008 | 13.4 | 30.5 |

A true and correct copy of the NPD data upon which the table above is based is attached hereto as Exhibit B.

21. Since introducing the United States to its Root Cyclone™ technology vacuums in 2002, Dyson has sold over 7 million vacuums and handhelds, generating over $2 billion in revenue. In addition, in 2006 and 2007 alone, Dyson spent over $90 million each year in research, design and development of new products to support its efforts to continue to offer new, high-performing vacuums.

22. As Sir James Dyson and his team of engineers invented new and useful improvements to his cyclonic vacuums, he painstakingly protected these efforts around the world from copycat manufacturers by applying for and obtaining patents. To date, Sir James Dyson and Dyson UK's employees have applied for nearly two thousand patents related to innovative developments in cyclonic vacuum cleaners and floorcare technology.

**<u>Hoover's Platinum Collection Vacuums</u>**

23. Hoover and Dyson compete with one another in the upright vacuum cleaner market. Recently, in an effort to regain lost market share and revitalize its brand and image, Hoover introduced a premium line of vacuums designed to compete directly with Dyson's vacuums and

appeal to Dyson's customers. Hoover's Platinum Collection line includes six new, premium cleaning appliances: (1) the Lightweight Bagged Upright; (2) the Cyclonic Bagless Upright; (3) the Cordless Hand Vacuum; (4) the Cordless Stick Vacuum; (5) the Cyclonic Canister; and (6) the Carpet Shampooer. The Hoover Platinum Collection line of vacuums is priced to compete for the same customers who typically purchase Dyson's vacuums.

24. Hoover officially launched the Platinum Collection family of vacuums on February 22, 2009 with its large-scale "Clean Freaks Rejoice!" advertising campaign during the nationally televised 2009 Academy Awards show. Attached as Exhibit C is a true and correct copy of Hoover's February 20, 2009 Press Release announcing the Platinum Collection introduction. Promoting the cleaning performance characteristics of its Platinum Collection line of vacuums, Hoover aggressively advertises its Platinum Collection vacuums in multiple media formats, including television commercials, Home Shopping Network ("HSN") sales segments, print ads, the Internet, in-store displays, and on the products' packaging. Most recently, Hoover announced a partnership with USA Network to promote the Platinum Collection during its so-called "Clean Freaks Week." Attached as Exhibit D is a true and correct copy of Hoover's April 1, 2009 Press Release announcing the partnership with USA Network. On information and belief, Hoover likely will spend over $35 million by the end of 2009 on its Platinum Collection advertising campaign.

25. At the heart of Hoover's advertising campaign are several false and misleading claims regarding the performance of Hoover's various Platinum Collection vacuums. As described in greater detail below, Hoover's false and misleading claims promoting the purported superior performance characteristics of its Platinum Collection line of products to consumers are made on its products' packaging, in Hoover's HSN sales segments, and on the Internet.

26. In addition to making false and misleading statements of fact about the performance characteristics of its Platinum Collection line of vacuums, Hoover's Platinum Collection Cyclonic Bagless Upright Vacuum copies certain features of Dyson's Root Cyclone™ technology, and infringes one or more claims of US Patent No. 7,291,190 ("the '190 patent") entitled "Cyclonic Separating Apparatus."

## DEFENDANTS' FALSE AND MISLEADING ADVERTISING AND PACKAGING

### Hoover's "Clearly Cleaner" Claims

27. The boxes for Hoover's Platinum Collection Lightweight Bagged Upright and Platinum Collection Cyclonic Bagless Upright vacuums include the following virtually identical display panels:




Hoover Platinum Collection Lightweight Bagged Upright




Hoover Platinum Collection Cyclonic Bagless Upright

Attached as Exhibits E and F are true and correct copies of the product packaging for Hoover's Platinum Collection Lightweight Bagged Upright vacuum and Platinum Collection Cyclonic Bagless Upright vacuum, respectively.

28. The top portion of the panel on each box shows an overhead, bird's eye view of a purported side-by-side comparison of what appears to be the amount of white colored dirt on a black carpet that each of the three vacuums picks up after one pass.

29. Below the bird's eye view one-pass test comparison displayed on Hoover's Platinum Collection Lightweight Bagged Upright box is a short paragraph that reads: "In one pass**, the Hoover® lightweight bagged upright removes more dirt, so you can efficiently achieve the clean results you expect with less effort." The double asterisks reference the statement: "** One pass defined as one push forward and one pull backwards over the same path." Similarly, below the bird's eye view one-pass test comparison on the Hoover Platinum Collection Cyclonic Bagless Upright box is a short paragraph that reads: "In one pass**, the Hoover Platinum Collection™ Cyclonic Bagless Upright utilizes WindTunnel® Technology and Multi-Cyclonic filtration to remove more dirt without scattering or pushing dirt back into your carpet. Efficiently achieve the clean results you expect in fewer passes." The double asterisks reference the statement: "** One pass defined as one push forward and one pull backwards over the same path."

30. The three vacuums shown in the bird's eye view one-pass test comparison on the Hoover Platinum Collection Lightweight Bagged Upright box from left to right are: the Hoover Platinum Collection Lightweight Bagged Upright; the Dyson DC14 Animal; and an Oreck brand vacuum cleaner. The three vacuums shown in the bird's eye view one-pass test comparison on the Hoover Platinum Collection Cyclonic Bagless Upright box from left to right are: the Hoover

Platinum Collection Cyclonic Bagless Upright; the Dyson DC14 All floors; and a Bissell brand vacuum cleaner.

31. The bird's eye view one-pass test comparisons on both boxes show that the carpet cleaned with the Hoover product is virtually free of dirt after one pass, while the competing vacuums purportedly streak dirt, scatter dirt, and/or cause the dirt to pile up, creating a "snow-plow" effect.

32. The box for the Platinum Collection Lightweight Bagged Upright further states that the bird's eye view one-pass test comparison was performed pursuant to the "ASTM F608 Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness."

33. Below the bird's eye view one-pass test comparison on each box is a bar chart entitled "DIRT REMOVAL RATING." The bar chart provides a rating ranging from 50 to 100 for the Hoover vacuum inside the box in bright blue, and Competitor #1 and Competitor #2 in white. The ratings for both the Hoover Platinum Collection Lightweight Bagged Upright and Cyclonic Bagless Upright vacuums reach nearly 100, while the ratings for Competitors #1 and #2 each reach approximately 75 and 65, respectively, on the Platinum Collection Lightweight Bagged Upright box and approximately 83 and 80, respectively, on the Platinum Collection Cyclonic Bagless Upright box and.

34. Both boxes indicate that the "Dirt Removal Rating" was measured pursuant to the "ASTM F608 Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness."

35. The box for the Platinum Collection Cyclonic Bagless Upright further states that "[t]he images depicted in the Competitive Comparison Chart do not represent competitors 1 and 2 from the Dirt Removal Rating Chart."

36. The following statements from Hoover's Platinum Collection Lightweight Bagged Upright and Platinum Collection Cyclonic Bagless Upright boxes are false and misleading for at least the following reasons:

| FALSE/MISLEADING CLAIM | THE TRUTH |
| --- | --- |
| The bird's eye view shows the Hoover product picking up ***virtually all dirt***. | ***This claim is literally false.*** The Hoover vacuums ***do not pick up virtually all dirt*** after one pass. Independent testing shows the Hoover vacuums pick up ***no more than 41.4% of dirt*** on carpeted surfaces. |
| The "DIRT REMOVAL RATING" bar chart shows the Hoover products with a "dirt removal rating" or "cleaning effectiveness index" of ***nearly 100***. | ***This claim is literally false.*** Independent testing shows the Hoover vacuums pick up ***no more than 41.4% of dirt*** on carpeted surfaces. |
| The bird's eye view and "DIRT REMOVAL RATING" chart imply to consumers that the Hoover vacuums pick up ***90% or more of dirt***. | ***The image and chart taken together are impliedly false.*** Independent testing shows the Hoover vacuums pick up ***no more than 41.4% of dirt*** on carpeted surfaces. |
| The bird's eye view depicts the Dyson product ***creating a "snow plow" effect***. | ***This claim is literally false.*** Dyson's DC14 vacuums ***do not create a snow plow effect*** under actual vacuuming conditions. |

37. Hoover is using the same false and misleading "DIRT REMOVAL RATING" chart to market the Platinum Collection Lightweight Bagged Upright in nationally televised HSN sales segments. The HSN sales segment hosts show the "DIRT REMOVAL RATING" chart and demonstrate the vacuum's dirt pick-up in "one pass" as part of their sales pitch. Attached as Exhibit G is a true and correct copy of screen shots and the transcript from the HSN segment for the Hoover Platinum Collection Lightweight Bagged Upright.

**Hoover's "Fade Free Power" Claims**

38. Two of the vacuums in the Platinum Collection—the Platinum Collection Cordless Hand Vacuum and the Platinum Collection Cordless Stick Vacuum—are powered by Hoover's LiNX lithium-ion battery technology. The boxes for both of these cordless Platinum Collection products display the following line graph:




Attached as Exhibits H and I are true and correct copies of the packaging for Hoover's Platinum Collection Cordless Hand Vacuum and Platinum Collection Cordless Stick Vacuum, respectively.

39. The line graph shows that the "Ni-CD" battery (plotted in white) results in a gradual decline in cleaning power over time, while the Hoover LiNX "Li-ION" battery (plotted in blue) results in virtually constant cleaning power that does not drop-off until the battery is completely drained. Based on the grid lines on the Y axis, cleaning power decreases by only one-seventh, or 14.3%, until the Li-ION battery is completely drained. Immediately below the graph is the

statement: "None of the 'slow fade' of both power and suction that you've come to expect from traditional Ni-CD cordless cleaning products."

40. The "FADE FREE POWER" display is false and misleading for at least the following reasons:

| FALSE/MISLEADING CLAIM | THE TRUTH |
|---|---|
| The Hoover cordless vacuums have ***"Fade Free Power," "Sustained Cleaning Power,"*** and ***"None of the 'slow fade' of both power and suction."*** | ***These claims are literally false.*** The cleaning power fades ***significantly*** over time. |
| The line graph shows that the Hoover vacuums ***lose no more than 1/7 or 14.3% cleaning power*** before the battery is completely drained. | ***This claim is literally false.*** The Hoover vacuums' cleaning power fades over time, ***losing 25% of their cleaning power*** over most of the battery life, and ***losing 50% of their cleaning power*** just before the battery is completely drained. |

41. Hoover uses these same false and misleading images and phrases to market the Platinum Collection Cordless Hand Vacuum and Platinum Collection Cordless Stick Vacuum in a variety of media. For example, the hosts for the nationally televised HSN sales segments repeatedly refer to the LiNX battery system as having "fade free power," and televise the same "FADE FREE POWER" line graph found on the products' boxes, charting cleaning power over time. Attached as Exhibits J and K are true and correct copies of still photos and the transcripts from the HSN sales segments for Hoover's Platinum Collection Cordless Hand Vacuum and Platinum Collection Cordless Stick Vacuum, respectively. Hoover makes these same statements regarding "fade free power" and displays the same line graphs in advertising for the Platinum Collection cordless vacuums on its website. Attached as Exhibit L is a true and correct copy of the portion of the Hoover website where Hoover makes the "Fade Free Power" claim.

**Hoover's "Embedded DirtFINDER" Claims**

42. The box for Hoover's Platinum Collection Cyclonic Bagless Upright vacuum also includes the following panel:




Attached as Exhibit M is a true and correct copy of the packaging for Hoover's Platinum Collection Cyclonic Bagless Upright showing this claim.

43. As shown above, Hoover states that the Embedded DirtFINDER ("EDF") feature "uses real-time sonic technology to identify when dirt is being removed from your floor surface." Below that statement are two images of the vacuum head, one showing the word "DIRTY" in red lettering, and the other showing the word "CLEAN" in green. Underneath these images are two sentences that read: "While vacuuming, the EDF indicator will illuminate the word DIRTY in red as long as you are removing dirt from your carpet. ***Once the dirt has been removed from your carpet***, the EDF indicator will turn green, indicating that your carpet is clean." (Emphasis added.)

44. Hoover makes similar claims about the EDF features for at least three of its other vacuum cleaners. For example, Hoover claims "Embedded DirtFINDER—***carpet is clean*** when

light turns green!" on packaging for its WindTunnel Bagless Upright and Savvy Bagless Upright vacuums, and on the Internet for its SelfPropelled WindTunnel Bagless Upright vacuum. (Emphasis added.) True and correct copies of the Internet webpage for Hoover's Self-Propelled WindTunnel Bagless Upright, and the packaging for Hoover's Savvy Bagless Upright, and WindTunnel Bagless Upright vacuums are attached hereto as Exhibits N-P, respectively.

45. Hoover's statements about the functionality of the EDF feature are false and misleading for at least the following reasons:

| FALSE/MISLEADING CLAIM | THE TRUTH |
|---|---|
| Hoover claims that: "***Once the dirt has been removed from your carpet***, the EDF indicator will turn green" and "Embedded DirtFINDER—***carpet is clean*** when light turns green!" | ***These claims are literally false.*** The EDF feature turns green once the vacuums cease to pick up any more dirt, ***regardless of the amount of dirt left in the carpet, or whether the "carpet is clean."*** |

46. Hoover makes similar claims on the Platinum Collection Cyclonic Bagless Upright webpage. For example, the product information video on the website explains how the EDF feature works and shows the words "***Carpet is clean*** … when the light turns green!" over an image of a "Clean" EDF reading. (Emphasis added.) Attached as Exhibit Q is a true and correct copy of a screen shot displaying this claim as shown on Hoover's website.

**<u>Hoover's Nano-Lite "30% Better" Claim</u>**

47. The Hoover Nano-Lite is an upright bagless vacuum. Featured prominently in the upper right-hand corner on the front panel of the Hoover Nano-Lite box is the following sticker:




Attached as Exhibit R is a true and correct copy of the Hoover Nano-Lite box and sticker.

48. Hoover claims that the Nano-Lite product "cleans carpet ***30% better*** than Dyson® DC18*." (Emphasis added.) Below this comparative claim in small font is the following disclaimer: "*Proven by the only recognized industry standard ***representing real-life conditions in American homes***, ASTM F608." (Emphasis added.)

49. This comparative advertising statement is false and misleading for the following reasons:

| FALSE/MISLEADING CLAIM | THE TRUTH |
|---|---|
| The Hoover Nano-Lite ***"Cleans carpet 30% better than Dyson DC18*,"*** as proven by "the only recognized industry standard ***representing real-life conditions in American homes***, ASTM F608." | ***This statement is literally false.*** Under ASTM F608, the Hoover Nano-Lite ***cleans carpet only 11% better than the Dyson DC18***. When tested under the "real-life conditions in American homes," the Hoover Nano-Lite performs ***worse than*** the Dyson DC18. |

**HOOVER'S INFRINGEMENT OF DYSON'S VALUABLE PATENT RIGHTS**

50. United States Patent No. 7,291,190, ("the '190 patent"), entitled "Cyclonic Separating Apparatus," was duly and legally issued to Anthony Joseph Dummelow, David Stuart Harris, and Ricardo Gomiciaga-Pereda by the United States Patent and Trademark Office on November 6, 2007. A true and correct copy of the '190 patent is attached hereto as Exhibit S.

51. Dyson is the assignee of all rights, title, and interests in the '190 patent, and has the exclusive right to make, use, sell, offer to sell, and import into the United States any products that practice one or more of the claims of the '190 patent.

52. Hoover's Platinum Collection Cyclonic Bagless Upright infringes one or more claims of the '190 patent. Hoover is not licensed by Dyson to make, use, sell, offer to sell, or import into the United States any products that practice one or more of the claims of the '190 patent.

53. Dyson has suffered and will continue to suffer damage and irreparable injury unless this Court enjoins Hoover from continuing its infringement.

## COUNT I
## FALSE AND MISLEADING STATEMENTS OF FACT IN VIOLATION OF THE LANHAM ACT

54. Dyson repeats and realleges the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55. Hoover makes multiple false and misleading descriptions and representations of fact in commercial advertising and promotion concerning the nature, characteristics, and qualities of its goods in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

56. Hoover's false and misleading descriptions and representations about its products are made in connection with, or on containers for, its vacuum products, each of which has been marketed, advertised and sold in interstate commerce.

57. Hoover's false and misleading descriptions and representations of fact concern the cleaning ability and performance of Hoover's vacuums, and as such are material to consumer decision-making.

58. Hoover's false and misleading descriptions and representations of fact have deceived and are likely to deceive purchasers and consumers into, among other things, purchasing vacuum

cleaners from Hoover instead of from Dyson and unfairly and unlawfully shifting income and profit from Dyson to Hoover.

59. Hoover's false and misleading statements about its own and Dyson's goods have damaged Dyson's goodwill and reputation, for which Dyson has no adequate remedy at law, and are likely to impact Dyson's sales.

60. Dyson has been and likely will continue to be damaged by Hoover's false and misleading representations in an amount to be determined at trial.

61. On information and belief, Hoover's conduct is willful, deliberate, intentional, and in bad faith.

62. By reason of the foregoing acts, Hoover has caused and, unless this Court enjoins Hoover, will continue to cause, irreparable harm to Dyson. Dyson has no adequate remedy at law.

## COUNT II
## PATENT INFRINGEMENT
## IN VIOLATION OF THE PATENT ACT

63. Dyson repeats and realleges the allegations contained in paragraphs 1 through 62 as though fully set forth herein.

64. Dyson is the assignee of all rights, title, and interest in United States Patent No. 7,291,190 ("the '190 patent"), entitled "Cyclonic Separating Apparatus," which was duly and legally issued by the United States Patent and Trademark Office on November 6, 2007.

65. Dyson exclusively manufactures and sells vacuums in the United States that practice one or more of the claims of the '190 patent.

66. On information and belief, Hoover has been and currently is infringing, inducing infringement of, and/or contributing to infringement of one or more claims of the '190 patent by

making, using, importing, offering for sale, or selling the Hoover Platinum Collection Cyclonic Bagless Upright, which infringes at least one of the claims of the ‘190 patent either literally or under the doctrine of equivalents, without authorization or license from Dyson.

67. On information and belief, Hoover’s infringement has been deliberate, willful, intentional, and with full knowledge of the existence of the ‘190 patent.

68. Hoover will cause Dyson substantial damage and irreparable injury by virtue of its continuing infringement of the ‘190 patent. Dyson will suffer further damage and irreparable injury unless and until this Court enjoins Hoover from continuing such infringement.

69. Dyson is entitled to injunctive relief and compensatory relief, including attorneys’ fees, under 35 U.S.C. §§ 271, 281, and 283-285.

**COUNT III**
**UNFAIR COMPETITION IN VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

70. Dyson repeats and realleges the allegations contained in paragraphs 1 through 69 as though fully set forth herein.

71. Hoover has engaged in the foregoing unfair and deceptive acts and practices with the intent that the consuming public relies on, and with the effect that the consuming public has relied on, Hoover’s false and misleading representations.

72. Hoover’s false and misleading descriptions and representations have deceived and are likely to deceive purchasers and consumers into purchasing goods from Hoover instead of Dyson and unfairly and unlawfully shifting income and profit from Dyson to Hoover.

73. Hoover’s foregoing acts constitute deceptive trade practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*

74. Dyson has been and likely will continue to be damaged by Hoover's false and misleading representations in an amount to be determined at trial.

75. On information and belief, Hoover's conduct is willful, deliberate, intentional, and in bad faith.

76. By reason of the foregoing acts, Hoover has caused and, unless this Court enjoins Hoover, will continue to cause, irreparable harm to Dyson. Dyson has no adequate remedy at law.

## COUNT IV
## UNFAIR TRADE PRACTICES IN VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

77. Dyson repeats and realleges the allegations contained in paragraphs 1 through 76 as though fully set forth herein.

78. Hoover makes false and misleading representations that its goods have characteristics or benefits that they in fact do not have.

79. Hoover's false and misleading representations of fact disparage Dyson's goods, and cause confusion or misunderstanding about the characteristics of Hoover's goods.

80. The foregoing acts of Hoover constitute unfair trade practices in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2 *et seq.*

81. Dyson has been and likely will continue to be damaged by Hoover's false and misleading representations in an amount to be determined at trial.

82. On information and belief, Hoover's conduct is willful, deliberate, intentional, and in bad faith.

83. By reason of the foregoing acts, Hoover has caused and, unless this Court enjoins Hoover, will continue to cause, irreparable harm to Dyson. Dyson has no adequate remedy at law.

## COUNT V
## CONDUCT IN VIOLATION OF THE COMMON LAW OF UNFAIR COMPETITION

84. Dyson repeats and realleges the allegations contained in paragraphs 1 through 83 as though fully set forth herein.

85. Hoover's acts alleged in this Complaint constitute unfair competition under the common law of the State of Illinois and other States. Hoover's false and misleading representations are likely to mislead and deceive the public and already have misled and deceived the public. Unless enjoined, Hoover likely will continue to mislead and deceive the public.

86. Dyson has been and likely will continue to be damaged by Hoover's false and misleading representations in an amount to be determined at trial.

87. On information and belief, Hoover's conduct is willful, deliberate, intentional, and in bad faith.

88. By reasons of the foregoing acts, Hoover has caused and, unless this Court enjoins Hoover, will continue to cause, irreparable harm to Dyson. Dyson has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Dyson respectfully requests that this Court enter judgment and orders:

A. Declaring that Hoover has violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); the Patent Act, 35 U.S.C. § 271 *et seq.*; the Illinois Consumer Fraud and Deceptive Business

Practices Act, 815 ILCS § 505/2 *et seq.*; the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2 *et seq.*; and the common law of unfair competition.

B. Preliminarily and permanently enjoining and restraining Hoover, its officers, directors, agents, servants, employees, licensees, parents, successors, assigns, attorneys, representatives, and distributors, and all others in active concert or participation with any of them, and all persons acting on their behalf or within their control from directly or indirectly making and using in commerce any further false or misleading descriptions or representations of fact about its vacuum products.

C. Permanently enjoining and restraining Hoover, its officers, directors, agents, servants, employees, licensees, parents, successors, assigns, attorneys, representatives, and distributors, and all others in active concert or participation with any of them, and all persons acting on their behalf or within their control from infringing, inducing to infringe, or contributing to any infringement of the '190 patent.

D. Ordering Hoover to retract and correct its false and misleading advertising claims.

E. Ordering Hoover to pay to Dyson:

(1) Its patent infringement damages, costs, and pre-judgment interest pursuant to 35 U.S.C. § 284;

(2) Increased damages in an amount not less than three times the damages assessed, in accordance with 35 U.S.C. § 284;

(3) All profits enjoyed by Hoover from the sale of any and all of the vacuums that are the subject of this Complaint;

(4) All monetary damages sustained and to be sustained by Dyson as a result of Hoover's unlawful false and misleading advertising, including without limitation any

lost profits, damage to reputation and goodwill, and the costs for any corrective advertising, in an amount to be determined at trial;

(5) Exemplary damages; and

(6) Dyson's costs and disbursements in this action, including its reasonable attorneys' fees.

F. Granting Dyson such other further relief as justice and equity may require.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Dyson respectfully demands a trial by jury of all issues triable by a jury.

Dated: April 16, 2009

Respectfully submitted,
/s/ David K. Callahan
David K. Callahan, P.C. (#6206671)
Ann Marie T. Wahls (#6275778)
Maria A. Meginnes (#6283509)
Helen I. Odom (#6293497)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, Illinois 60654
(312) 862-2000 (telephone)
(312) 862-2200 (facsimile)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2009, a true and correct copy of the present **COMPLAINT** was served on the following parties as indicated below:

CORPORATION SERVICE COMPANY
Registered Agent for TTI Floor Care
North America, Inc. and Hoover, Inc.
2711 Centerville Road, Suite 400
Wilmington, De 19808
***via hand delivery***

Mary Schoening
General Counsel
TTI FLOOR CARE NORTH AMERICA, INC.
7005 Cochran Road
Glenwillow, Oh 44139
Mary.Schoening@ttifloorcare.com
***via electronic mail and next day delivery***

/s/ David K. Callahan
*Counsel for Plaintiff*